# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4063 | **DATE** | 6/8/2004 |
| **CASE TITLE** | Georgia Mindell vs. David Kronfeld et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motions to Dismiss [12-1] and [15-1]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum opinion and order, David Kronfeld's motion to dismiss [12-1] is GRANTED in its entirety. Defendant Boncher and Anderson f/d/b/a Aria Model & Talent Management, Ltd.'s motion to dismiss Count IV of Plaintiff's amended complaint [15-1] is GRANTED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 0 9 2004 | |
| X | Docketing to mail notices. | | date docketed | 33 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| slf(lc) | courtroom deputy's initials | 2004 JUN -8 PM 2:22 U.S. DISTRICT COURT CLERK | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
JUN 9 2004

| | |
|---|---|
| GEORGIA MINDELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 C 4063 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| DAVID KRONFELD and BONCHER AND ) | |
| ANDERSON, LTD. f/d/b/a ARIA MODEL & ) | |
| TALENT MANAGEMENT, LTD. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are two motions to dismiss Plaintiff Georgia Mindell's ("Plaintiff" or "Mindell") Amended Complaint. The first motion to dismiss was filed by David Kronfeld ("Kronfeld") to dismiss all counts filed against him. The second motion to dismiss was filed by Boncher & Anderson, Ltd., f/d//b/a Aria Model & Talent Management, Ltd. ("Aria") to dismiss Count IV of Plaintiff's Amended Complaint. For the reasons set forth below, Kronfeld's motion to dismiss is GRANTED in its entirety. Additionally, Aria's motion to dismiss Count IV of Mindell's Amended Complaint is GRANTED.

## I. Factual and Procedural Background

Aria is a booking agency for models and actors, with its principal place of business in Chicago, Illinois (Am. Compl. ¶ 9). Mindell was hired by Aria as a talent agent to primarily book film and television actors. (Am. Comp. ¶ 12). Marie Anderson ("Anderson") and Mary

Boncher ("Boncher") were the co-owners of Aria on Plaintiff's May 30, 2000 hire date. (Am. Compl. ¶ 11). On or about November 2000, Kronfeld was introduced to the employees of Aria as a new co-owner/chairman. (Am. Compl. ¶ 13). Mindell alleges that during her employment with Aria, she was subjected to sexual harassment and unwelcome sexual advances by Kronfeld. (Am. Compl. ¶ 3). As a result of Kronfeld's alleged behavior, Plaintiff asserts that the working environment at Aria became hostile, and that Kronfeld's conduct was so pervasive, it altered the conditions of employment and interfered with Mindell's work performance. (Am. Compl. ¶ 19). Additionally, Plaintiff alleges that Boncher, Anderson and Robert Schroeder ("Schroeder"), Mindell's immediate supervisor from February or March 2001 until approximately June 30, 2001, contributed to the hostile work environment at Aria.

### A. Plaintiff's Allegations Against Kronfeld

In her Amended Complaint, Mindell provides specific incidents and encounters with Kronfeld that she believes constituted sexual harassment and contributed to a hostile work environment at Aria. The first incident occurred at Kronfeld's first staff meeting at Aria. During that meeting, Kronfeld stated that he: (1) knew nothing about the talent agency business but was very interested in it because he greatly enjoyed "beautiful young models"; (2) intended to make up for his lack of social life by owning this business; (3) felt the ["Kronfeld"] his employees saw at work and the ["Kronfeld"] his employees saw at parties could be two different people and not to hold it against him or judge him; (3) wanted his business affairs kept confidential and that, otherwise, the "trust that we all share will be destroyed"; and (4) would ensure that all employees

would make substantial money in salaries and bonuses in return of their loyalty. (Am. Compl. ¶ 20).

Additionally, on or about December 14, 2000, at Aria's Christmas party, Mindell alleges that Kronfeld hugged and kissed all of the female employees, including her. (Am. Compl. ¶ 21). On or about December 18, 2000, Kronfeld and Mindell attended another company party. At this party, Kronfeld stood one inch from Mindell and asked her whether she had a boyfriend. Mindell stated that she did have a boyfriend, and the relationship was serious. Kronfeld then stated that he thought Mindell's boyfriend was lucky and that he wished that he was her boyfriend. (Am. Compl. ¶ 22).

On or about January 11, 2001, Kronfeld insisted that each employee (most of whom are female) meet him alone in the lobby of the Four Seasons Hotel, his place of residence. (Am. Compl. ¶ 23). Mindell and Vicki Fellner ("Fellner") went to the meeting together. Id. Upon arrival, Kronfeld greeted each woman with hugs and kisses. Id. No substantive business was conducted at the meeting. Id. Kronfeld told Mindell that his affairs were private and confidential. Id. Kronfeld then kissed Mindell and Fellner on their cheeks. Id.

In mid-January 2001, Anderson and Mindell attended the ATMC, a talent/model convention, in Hilton Head, South Carolina. (Am. Compl. ¶ 24). While in the airport awaiting the departure of their flight, Anderson advised Mindell that Kronfeld was going to join them in Hilton Head. At that time, Mindell requested that Anderson not leave her alone with Kronfeld at the convention. (Am. Compl. ¶ 25). On or about January 17, 2001, following a group dinner at the talent/model convention, Kronfeld and Mindell were together in the lounge of the hotel. (Am. Compl. ¶ 26). After Plaintiff told Kronfeld that she wished to leave the lounge, Kronfeld

insisted that she stay. Id. Mindell excused herself to use the washroom, and upon returning to the lounge, intended to tell Kronfeld that she was leaving. Id. Before she could do so, Kronfeld pulled her down forcefully on his lap, grabbed her face, and pulled her face close to his. Id. Kronfeld asked Mindell when she would date him and break up with her boyfriend. Id. When Mindell protested, Kronfeld tried to kiss her on the lips. Id. Mindell pulled away and left. Id. Later that evening, Plaintiff became physically ill. Additionally, on or about January 19, 2001, while waiting to go to dinner at the talent/model convention, Kronfeld told Mindell to stand up so that he could view her outfit. (Am. Compl. ¶ 27). Kronfeld repeatedly said that Mindell had a nice figure and that any man would love to be with her. Id.

Upon returning from the convention, Anderson and Boncher advised Mindell that her job was in jeopardy. (Am. Compl. ¶ 28). On or about February 5, 2001, Mindell put on a presentation to demonstrate her value to the company. (Am. Compl. ¶ 29). Thereafter, Kronfeld held weekly meetings, during which he hugged and kissed all of the female staff members, including Mindell. (Am. Compl. ¶ 30). On several occasions during the winter and spring of 2001, and on or about July 10, 2001, Mindell reported Kronfeld's conduct to Schroeder, her immediate supervisor, and advised him that Kronfeld's conduct was unwelcome harassment. (Am. Compl. ¶ 33). Schroeder told Mindell that she should pretend to be on the telephone when Kronfeld arrived in her office, yet took no action to confront Kronfeld about Mindell's allegations. (Am. Compl. ¶ 34).

Because no action was taken against Kronfeld after her complaints, Mindell believed that any further complaints to Anderson or Schroeder regarding Kronfeld would result in her termination from Aria. (Am. Compl. ¶ 35). On or about July 10, 2001, Kronfeld approached

Mindell when she was on the telephone and directed the following behaviors towards her. Kronfeld: (1) hugged Mindell; (2) kissed her; (3) told her how tan and beautiful she looked; and (4) asked her to go on a trip with him and said, "You think I'm kidding? I'm serious." (Am. Compl. ¶ 36). Subsequent to these actions, Mindell left the room. Id. Several minutes after Mindell left the room, Kronfeld blocked the hallway passage, pushed Mindell against the wall, pressed his body against hers, and put his face approximately one inch away from hers. (Am. Compl. ¶ 37). Mindell then stated, "Come on, are you serious about taking a trip?" Kronfeld then asked if Mindell would go on a date with him. Id.

On or about July 25, 2001, while Mindell was in her office talking on the telephone, Kronfeld entered and placed his hands on her shoulders and began tickling her neck. (Am. Compl. ¶ 38). Mindell extended her arm and motioned Kronfeld to stop. (Am. Compl. ¶ 38). Moments later, Kronfeld stood near Mindell, and looked at her while she continued her telephone conversation. Id. Kronfeld left Plaintiff's office only after she expressed her anger towards him with a menacing look. (Am. Compl. ¶ 38).

On July 27, 2001, Mindell's supervisor, Schroeder, gave her an ultimatum: either she quit or she would be terminated. (Am. Compl. ¶ 39). On July 30, 2001, Mindell was terminated.

### B. Plaintiff's Allegations Against Schroeder

Mindell also alleges that Schroeder contributed to the hostile work environment at Aria in numerous ways. Mindell alleges that Schroeder: (1) regularly talked about the sexual attributes of male models; (2) consistently commented to female employees, including Mindell, that women who had children should stay at home and should never be given any leeway in the

workplace; and (3) told Plaintiff and a co-employee, Amie Richardson, on numerous occasions, that female genitalia disgusted him and that he could always tell when a woman was menstruating because he could "smell" it. Mindell also alleges that in February or March 2001, Schroeder was promoted ahead of Mindell and another well qualified woman to a position superior to hers. (Am. Compl. ¶ 48). Finally, Plaintiff alleges that Schroeder was not terminated by Aria on or before the date Mindell was terminated, although Schroeder violated policy at Aria which all employees were told was grounds for immediate termination. (Am. Compl. ¶ 49).

### C. Plaintiff's Allegations Against Boncher and Anderson

Additionally, Mindell alleges that Boncher and Anderson were aware of Kronfeld's behavior, yet failed to implement any measures to remedy the situation. (Am. Compl. ¶ 51). Further, Mindell alleges that Anderson and Boncher contributed to the hostile work environment at Aria in the following ways: (1) told employee Lisa Raley that she was fat, needed to cut her hair, apply her makeup differently, and wear turtlenecks to hide her large chest; (2) required Raley to hire a makeup artist to show her how to "look better"; (3) approved Kronfeld's suggestion that a vote should be conducted as to whether receptionist Gail Angel should be terminated because of her looks and clothing; (4) required employee Nancy Tenicott to take makeup lessons to keep her job; and (5) arranged for models to attend functions with Kronfeld, and instructed others to assist in this effort. (Am. Compl. ¶ 52).

### D. Plaintiff Files Suit in the Circuit Court of Cook County

On September 7, 2001 Plaintiff filed a complaint with the Circuit Court of Cook County, Illinois ("Circuit Court" or "state court"). Plaintiff's suit was based upon the incidents that occurred during her employment with Aria. (See Def. Kronfeld's Memo. in Support of Motion to Dismiss, p. 2). Subsequently, Mindell filed a four-count amended complaint on January 22, 2002. Id. Plaintiff asserted claims against Kronfeld for assault, battery, and intentional infliction of emotional distress. Id. Additionally, Mindell asserted a negligence claim against Aria. Id.

On September 30, 2002, pursuant to Kronfeld's motion to dismiss, Judge Phillip Bronstein of the Circuit Court entered an order striking Plaintiff's intentional infliction of emotional distress claim against Kronfeld, and gave Mindell until December 2, 2002 to replead her claim. (See Def. Kronfeld Ex. A). Plaintiff did not replead her claim. On March 11, 2003, Mindell filed a Complaint in this Court against Aria and Kronfeld. On May 30, 2003, Mindell voluntarily dismissed her entire state court lawsuit. On October 7, 2003, Plaintiff filed a four-count amended complaint in this Court. Mindell's amended complaint alleges that Defendants Aria and Kronfeld subjected Plaintiff to sexual discrimination, sexual harassment, and disparate treatment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. Additionally, Plaintiff's amended complaint contains a state supplemental claim for intentional infliction of emotional distress.

## II. Legal Standard for a Motion to Dismiss

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all well pleaded allegations as true. In addition, the Court must view these

allegations in the light most favorable to the plaintiff." Gomez v. Illinois Board of Education, 811 F.2d 1030, 1039 (7th Cir. 1987). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In analyzing the motions to dismiss under Fed. R. Civ. P. 12(b)(6), the Court may take "judicial notice of matters of public record", which includes the public court documents filed in Mindell's state court suit against Aria and Kronfeld. Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994) (citing United States v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991)).

### III. Analysis of Kronfeld and Aria's Motions to Dismiss

Kronfeld and Aria have filed motions to dismiss based on the following issues. Kronfeld contends: (1) he cannot be held individually liable for Plaintiff's claims brought under Title VII; and (2) Plaintiff's claim for intentional infliction of emotional distress must be dismissed under the doctrine of *res judicata*. Aria contends: (1) Plaintiff is collaterally estopped from bringing a claim for intentional infliction of emotional distress against Aria based upon Kronfeld's alleged conduct; and (2) the allegations in Plaintiff's amended complaint do not support a claim for intentional infliction of emotional distress. Each of Kronfeld's and Aria's arguments will be addressed in turn.

#### A. Can Kronfeld be Held Individually Liable for Mindell's Title VII Claims?

Defendant Kronfeld contends that Title VII does not provide for the liability of individuals, and consequently, Counts I through III of Plaintiff's amended complaint must be

dismissed against him. Mindell maintains that Kronfeld may be sued in his individual capacity, as Plaintiff has alleged that Kronfeld controlled the internal operations of the office, had the responsibility of appointing positions, acted as more than a mere supervisor, was the main decision maker, was a controlling shareholder, and left his employees with no avenue to object to his misconduct.

Even when viewing the facts in the light most favorable to the Plaintiff, which assumes that Kronfeld had significant control over the conditions Mindell's employment, it is clear that Kronfeld can face no individual liability under Title VII. The Seventh Circuit has determined that Title VII does not impose liability on individual employees. Gastineau v. Fleet Mortgage Corporation, 137 F.3d 490, 493 (7th Cir. 1998). Courts do not interpret Title VII as imposing personal liability on agents, but rather invokes the doctrine of *respondeat superior* to make employers responsible for the actions of their agents. Id. The Seventh Circuit has held that Congress did not intend to impose individual liability against an employer's agents. Williams, 72 F.3d 552, 553 (7th Cir. 1995) (citing EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1279-82 (7th Cir. 1995)). Further, the Seventh Circuit has made clear that, "a supervisor does not, in his individual capacity, fall within Title VII's definition of employer." Williams v. Banning, 72 F.3d 552, 555 (7th Cir. 1995).[1] Consequently, individual liability cannot be imposed on Kronfeld, notwithstanding the fact that he exercised significant control within the corporation. Therefore, Counts I, II, and III are dismissed against Defendant Kronfeld.

---

[1] In a recent opinion that noted their decision in Williams, the Seventh Circuit stated, "In the context of a sexual harassment claim, the employee's employer usually is that of the harassing supervisor, and thus it is rational and consistent with standard agency principles to impute liability to the employer based on the actions of the supervisory employee." Robinson v. Sappington, 351 F.3d 317, 332 (7th Cir. 2003).

### B. Is Plaintiff's Claim for Intentional Infliction of Emotional Distress Against Kronfeld Barred by the Doctrine of *Res Judicata*?

As stated in Section II.B of this Opinion, on September 30, 2002, Judge Bronstein of the Circuit Court of Cook County dismissed Plaintiff's intentional infliction of emotional distress claim against Kronfeld, giving her leave to refile her claim by December 2, 2002. Defendant Kronfeld contends that Plaintiff's failure to replead her claim by December 2, 2002 resulted in the September 30, 2002 Order becoming a final adjudication on the merits on Plaintiff's intentional infliction of emotional distress claim. Conversely, Plaintiff argues that the September 30, 2002 order lacked finality because it gave her leave to amend her complaint, and consequently, was not a final adjudication on the merits.

The Court will apply Illinois law to determine the applicability of *res judicata* to Plaintiff's present suit. See Corporation v. Town of Cicero, 220 F.3d 522, 529 (7th Cir. 2000) ("Because an Illinois state court rendered the [first] order at issue, we must apply Illinois law to determine whether *res judicata* bars [subsequent federal] claims...we must give the [state order] the *res judicata* effect an Illinois court would give it."). "The doctrine of *res judicata* provides that a final judgment, rendered on the merits by a court of competent jurisdiction, is an absolute bar to a subsequent action involving the same claim, demand or cause of action between the parties." Saxon Mortgage, Inc. v. United Financial Mortgage Corporation, 728 N.E.2d 537, 542 (Ill. App. Ct. 2000) (citing River Park, Inc. v. City of Highland Park, 703 N.E.2d 883, 889 (Ill. 1998)). There are three elements of *res judicata*: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies." Saxon Mortgage, 728 N.E.2d at 542 (quoting People ex rel. Burris v.

Progressive Land Developers, Inc., 602 N.E.2d 820, 824-25 (Ill. 1992)). *Res judicata* reaches not only those claims actually decided in the first cause of action, but also those claims that could have been decided in that first cause of action. Saxon Mortgage, 728 N.E.2d at 542 (citing Progressive, 608 N.E.2d at 825)). The parties do not dispute the second and third elements of *res judicata*–both parties agree that there is an identity of the cause of action and parties. Therefore, the Court will address whether there was a final adjudication on the merits in the Circuit Court on Mindell's intentional infliction of emotion distress claim.

Illinois Supreme Court Rule 273 provides, "Unless the order or dismissal or a statue of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." Mindell contends that because she had leave to refile her complaint in Circuit Court, there was never a final adjudication on the merits. The Seventh Circuit has held that pursuant to Illinois law, if an order strikes and dismisses a cause of action, yet gives the plaintiff leave to file an amended complaint, this is *not* considered a final adjudication on the merits. Gilbert v. Braniff International Corporation, 579 F.2d 411, 413 (7th Cir. 1978). Kronfeld could have requested that the Circuit Court enter an order dismissing Mindell's case with prejudice when she failed to amend her complaint by December 2, 2002. Id. Yet, Defendant Kronfeld failed to do so. Consequently, the state court order granting Plaintiff leave to amend her complaint cannot be deemed a final adjudication on the merits.

## C. Is Plaintiff Collaterally Estopped From Bringing a Claim for Intentional Infliction of Emotional Distress Against Aria Based Upon Kronfeld's Alleged Conduct?

Defendant Aria contends that Mindell is collaterally estopped from bringing a claim for intentional infliction of emotional distress against Aria based upon Kronfeld's alleged conduct. Aria states Plaintiff is collaterally estopped because: (1) Kronfeld's conduct in Plaintiff's claim for intentional infliction of emotional distress in her action before this Court is identical to the conduct alleged in Plaintiff's state claim; (2) there is a previous final judgment on the merits on Plaintiff's claim for intentional infliction of emotional distress based upon Kronfeld's conduct; and (3) the parties in the Circuit Court lawsuit are the same or in close privity with those in the cause of action before this Court. Mindell contends that: (1) there was no previous final judgment on the merits; and (2) the issues which formed the basis of Aria's suit against Kronfeld for intentional infliction of emotional distress are not identical to those issues that form the basis of her suit against Aria in this Court for Kronfeld's actions.

Collateral estoppel precludes relitigation of issues in a subsequent proceeding when: (1) the party against whom estoppel is asserted was a party to the prior adjudication; (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit; (3) the resolution of the particular issues was necessary to the court's judgment; and (4) those issues are identical to the issues raised in the subsequent suit. Farmer v. Lane, 864 F.2d 473, 477 (7th Cir. 1988).

Aria's arguments fail under the second element of the doctrine collateral estoppel, as this Court has determined that the state court order granting Mindell leave to file an amended complaint was not a final adjudication on the merits. Further, Defendant Aria has not

-12-

demonstrated that the issues that form the basis of Mindell's allegations against it in Count IV of Plaintiff's amended in complaint in this Court are identical to those issues actually adjudicated in Mindell's state court suit against Kronfeld for intentional infliction of emotional distress. In the case before this Court, Mindell brings her cause of action against Aria for Kronfeld's actions based upon a *respondeat superior* theory. Aria's liability under a theory of *respondeat superior* was not actually litigated when the Court dismissed the intentional infliction of emotional distress claims against Kronfeld, based upon an *individual* liability theory. See e.g., S & S Automotive Co. v. Checker Taxi Co., 520 N.E.2d 929, 930 (finding the doctrine of collateral estoppel to be inapplicable where issues of agency were not actually litigated prior to an entry of default judgment). Therefore, Plaintiff is not collaterally estopped from bringing suit against Aria for Kronfeld's actions that resulted in Plaintiff's intentional infliction of emotional distress claim.

D. Does Plaintiff's Intentional Infliction of Emotional Distress Allegation State a Claim Upon Which Relief Can be Granted?

In Count IV of her amended complaint, Mindell alleges that all of the adverse employment decisions discussed in Sections I.A-C of this Opinion constituted extreme and outrageous conduct, performed with reckless disregard of the effect that such actions would have on her. (Am. Compl. ¶ 63). Additionally, Plaintiff alleges that Defendants contacted her subsequent employers and made disparaging and defamatory remarks concerning her. Id. Mindell alleges that these actions caused severe emotional distress and mental anguish, and have damaged her personal and professional reputation. (Am Compl. ¶ 64). The Court will address

whether Plaintiff's allegations of intentional infliction of emotional distress state a claim upon which relief can be granted.

Mindell's intentional infliction of emotional distress claim is governed by Illinois law. In Illinois, to state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. Doe v. Calumet City, 641 N.E.2d 498, 506 (Ill. 1994). Whether particular conduct is extreme and outrageous is judged by an objective standard, based upon the particular facts and circumstances of the particular case. Id. "Mere insults, indignities, threats, annoyances, petty oppressions, or trivialities" do not rise to the level of intentional infliction of emotional distress. Oates v. Discovery Zone, 1161, F.3d 116, 1174 (7th Cir. 1997) (quoting McGrath v. Fahey, 533 N.E.2d 806, 809 (1998)). Additionally, intentional infliction of emotional distress does not reach acts which are merely "inconsiderate, rude, vulgar, uncooperative, unprofessional, and unfair." Oates, 116 F.3d at 1174 (citing Miller v. Equitable Life Assurance Society, 537 N.E.2d 887, 889 (Ill. 1989)).

In the employment context, more is required for a claim of intentional infliction of emotional distress than what is required for claims such as sexual harassment. Piech v. Arthur Andersen & Co., S.C., 841 F.Supp. 825, 831-32 (N.D. Ill. 1994). In Welsh v. Commonwealth Edison Co., 713 N.E.2d 679 (Ill. App. Ct. 1999) the Court noted:

> [I]n the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for intentional infliction of emotional

distress. This reluctance seems to be grounded in the fear that, if the anxiety and stress resulting from discipline, job transfers, or even terminations could form the basis of an action for emotional distress, virtually every employee would have a cause of action.

Id. at 684.

However, before the Court addresses whether Plaintiff's intentional infliction of emotional distress allegation states a claim upon which relief can be granted, the Court notes that neither party addressed whether this Court has subject matter jurisdiction over Plaintiff's intentional infliction of emotional distress claim. Therefore the Court, *sua sponte*, will address whether it can exercise subject matter jurisdiction over Count IV of Mindell's amended complaint.

In Geise v. Phoenix Co. of Chicago, 639 N.E.2d 1273, 1277 (Ill. 1994), the Illinois Supreme Could held that where a tort claim is "inextricably linked" to a claim of sexual harassment, such that there is "no independent basis for imposing liability," those claims are preempted by the Illinois Human Rights Act. The Geise court reached this decision by looking to the language of the Illinois Human Rights Act. Id. at 1276. Section 775 ILCS 5/8-111 (C) of the Illinois Human Rights Act provides, "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."[2] In a subsequent decision, Maksimovic v. Tsogalis, 687 N.E.2d 21 (Ill. 1997), the

---

[2] Section 775 ILCS 5/2-102(D) of the Illinois Human Rights Act provides that it is a civil rights violation, "[f]or any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment." Further, Section 775 ILCS 5/2-101(E) defines "sexual harassment" as:
    any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions

Illinois Supreme Court clarified the holding of Geise, and held that Geise does not preclude a court from exercising jurisdiction over all tort claims relating to a sexual harassment claim. Maksimovic, 687 N.E.2d at 23. Rather, the court must address whether those subsequent tort claims are "inextricably linked to a civil rights violations such that there is no independent basis for the action apart from the Act itself." Id. See also Quantock v. Shared Marketing Services, Inc., 312 F.3d 899, 905 (7th Cir. 2002) (affirming dismissal of plaintiff's intentional infliction of emotional distress claim when supported by factual allegations identical to her Title VII sexual harassment claim).

Undoubtedly, Mindell's intentional infliction of emotional distress allegations are inextricably linked to her claim for sexual harassment. The substantial majority of the facts underlying her claim of intentional infliction of emotional distress are the same allegations that make up her sexual harassment claim. Additionally, the language of the Illinois Human Rights Act is equally applicable to employers and employees and agents. See Johnson v. Chicago Board of Education, No. 00 C 1800, 2002 U.S. Dist. LEXIS 14147 at *17 ("Third party conduct as well as direct sexual harassment by the employee is proscribed by the [Illinois Human Rights Act]."); see also Haanigan-Haas v. Bankers Life & Cas. Co., No. 95 C 7408, 1996 U.S. Dist. LEXIS 3618 at *9 (noting the language of the Illinois Human Rights Act applies to the conduct of employers and employees). Therefore, this Court lacks subject matter jurisdiction over those portions of Plaintiff's intentional infliction of emotional distress claim that arise from the same facts as her sexual harassment allegations. The only additional element Mindell adds to her intentional

---

affecting such individual, or (3) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.

infliction of emotional distress claim is that Defendants contacted Mindell's subsequent employers and made disparaging and defamatory remarks concerning Plaintiff. (Am. Compl. ¶ 63). However, this allegation, without the support of the allegations that comprise Plaintiff's sexual harassment claim, is insufficient to state a claim for relief alleging intentional infliction of emotional distress. Consequently, Count IV of Plaintiff's amended complaint is dismissed in its entirety.

## IV. Conclusion

For the foregoing reasons, Kronfeld's motion to dismiss is GRANTED in its entirety. Additionally, Aria's motion to dismiss Count IV of Mindell's Amended Complaint is GRANTED.

Enter:

David H. Coar
United States District Judge

Dated: **June 8, 2004**